DONALD MACKAY ET ALS. *vs.* THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY ET ALS.

* First Judicial District, Hartford, March Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A private corporation may be defined as an association of persons to
whom the sovereign has offered a franchise to become an artificial,
juridical person, with a name of its own, under which they can act
and contract, and sue and be sued; and who have either accepted
the offer and effected an organization in substantial conformity
with its terms (in which case a corporation *de jure* has been con-
stituted), or have done acts indicating a purpose to accept such
offer and effected an organization designed to be, but in fact not, in
substantial conformity with its terms (in which case a corporation
*de facto* has been constituted).

Appropriate legislation on the part of each of two or more States, de-
signed to have a concurrent effect in the creation of a new corpora-
tion composed of two or more corporations theretofore existing in
the different jurisdictions, does not—in the absence of any enact-
ment by Congress to the contrary—violate the constitutional pro-
hibition against agreements or compacts between States.

A State may grant a franchise of incorporation to a corporation of
another State or to corporations chartered by different States, as
fully as to natural persons who are citizens of the different States.

Where several corporations, each of a different State, are so consolidated
by the co-operating legislation of those States as to assume a new
corporate form and name, the consolidated corporation is, in each
of those States, in the eye of the law, as to acts there done or to be
done, a corporation of that State. Neither of the co-operating
States can confer upon it the franchise of maintaining a corporate
existence in any other State, nor add to nor diminish the powers
that it can exercise in any other. Accordingly, a corporation
chartered by this State and sued here as a Connecticut corporation,
upon an obligation which it had lawfully incurred and had promised
to discharge in this State, cannot escape its enforcement by the
courts of this State, upon the ground that it, the defendant, is
also a corporation in Massachusetts, under the laws of which no
such liability could have been legally assumed.

Argued March 2d—decided April 14th, 1909.

ACTION for the specific performance of a contract to in-
dorse a guaranty on certain certificates of stock, brought to
the Superior Court in New Haven County. The railroad
company filed a demurrer, and the other defendants an-

* Transferred from the third judicial district.

swered, admitting the truth of the complaint. Judgment on these pleadings (*Reed, J.*) for the plaintiffs, and appeal by the railroad company. *No error.*

The complaint stated this case: On June 25th, 1906, an agreement was made between Frederick W. Kendrick, Timothy E. Byrnes, and the Consolidated Railway Company, a Connecticut corporation, they being therein designated as the "subscribers," and Charles S. Mellen and six other individuals, therein designated as the "trustees," reciting that the subscribers had transferred to the trustees, under the designation of the New England Investment and Security Company, certain shares in the Worcester Railways and Investment Company, in the Worcester and Southbridge Street Railway Company, and in the Worcester and Blackstone Valley Street Railway Company; that the trustees, for the purpose of defining the beneficial interests of the subscribers and their assigns in said shares, had agreed to issue to them, or upon their order, negotiable certificates or evidences of interest as *cestuis que trustent* for 45,500 preferred shares, each of the par value of $100, and representing a beneficial preferred interest of $\frac{1}{45,500}$ in all said shares, and also similar certificates for 45,500 shares of common stock, each representing a beneficial interest of $\frac{1}{45,500}$ of said shares, subject to the preference of the other shares; that the purpose of the agreement was to enable the holders of trust shares to distribute the advantages and risks of their investments over different securities and enterprises in a way ordinarily possible only to investors of large means; and providing for the holding of the shares received from the subscribers in trust to manage, dispose of, invest and reinvest the same for the benefit of the holders of the new certificates.

This agreement further provided that the trustees, in their collective capacity and so far as practical and convenient, should be designated the "New England Investment and Security Company", and might adopt and use a

common seal, and should have power to vote on all shares at any time belonging to the trust, and also have the powers conferred by § 17 of chapter 109 of the Revised Laws of Massachusetts; and might exchange any shares held by them in any corporation, voluntary association, or trust, for the shares or securities of any other corporation, association, or trust in the New England States; taking over the property of such corporation, association, or trust, or any equivalent part thereof, upon such terms and conditions as said trustees might deem advisable.

The preferred shares which they were to issue were to entitle the holder to dividends at the rate of four per cent. a year, and in case of liquidation each holder of a share was to receive $105. This dividend was to be guaranteed and paid by the Consolidated Railway Company, agreeably to another contract, of even date, between it and the trustees by the name of the New England Investment and Security Company; and such a guaranty by the Consolidated Railway Company was to be printed and signed on the back of each certificate for preferred shares in the New England Investment and Security Company.

No certificate for shares in the latter was to be valid unless signed by the New England Trust Company of Boston, Massachusetts, registrar of the stock of the New England Investment and Security Company, or such other registrar as the trustees might substitute for it.

It was declared that a trust and not a partnership was created by the agreement, and that the shareholders were the *cestuis que trustent* and nothing more.

The death of a shareholder or trustee was not to terminate the trust, or entitle the legal representatives of such shareholder to any accounting; but they should be entitled to exchange his certificates for new ones in their own favor.

The trust was to continue for twenty years and eleven months, but might be renewed for a like term by vote of holders of two thirds of the common stock.

The other agreement, of even date, was between the New England Investment and Security Company, the Consolidated Railway Company, and the New York, New Haven, and Hartford Railroad Company. It provided for a guaranty of the 45,500 preferred shares of the New England Investment and Security Company by the Consolidated Railway Company, in consideration of the issue to the latter of all the common shares, and that it should guarantee, on request of the New York, New Haven and Hartford Railroad Company, any further preferred shares which the former Company might from time to time issue, on receipt of one common share for each preferred share so guaranteed, or upon such other consideration as the parties might agree on. The New York, New Haven and Hartford Railroad Company requested this, and agreed to indemnify the Consolidated Railway Company against loss from any such guaranties.

The Consolidated Railway Company, on May 31st, 1907, merged with and in itself the New York, New Haven and Hartford Railroad Company, under the name of the New York, New Haven and Hartford Railroad Company; and thereby succeeded to and became bound to perform the obligations assumed in said two agreements by the Consolidated Railway Company.

The trustees, as the New England Investment and Security Company, duly issued preferred shares, and the Consolidated Railway Company duly guaranteed them, all as provided in said two agreements.

On April 14th, 1908, the Hampden Trust Company became the owner of twenty-two of such shares, and held a negotiable certificate therefor, duly guaranteed upon the back by the New York, New Haven and Hartford Railroad Company. On May 14th, 1908, said Trust Company sold these shares to the plaintiffs, who surrendered the certificate for a new one in their own names to be issued by the New England Investment and Security Company. The latter Company duly executed such a new certificate and

delivered it to the New York, New Haven and Hartford
Railroad Company, with the demand for the indorsement
thereon of its guaranty. The latter now holds this certifi-
cate at its office in New Haven, but declines to execute any
guaranty thereon, though duly demanded by the plaintiffs,
who are bankers, and bought the shares to sell again, but
cannot sell them unless they receive such a certificate duly
guaranteed by said company. Without such a guaranty
the value of the shares would be greatly impaired; but the
exact amount of the impairment cannot be ascertained in
an action at law for damages. They have requested the
trustees and the New England Investment and Security
Company to sue for the execution of such guaranty, but
said trustees and said Company have refused so to do.

The claims were for a specific performance, a mandatory in-
junction, and such other and further relief as might be lawful.

This action was brought June 1st, 1908, and the writ
made returnable the next day. The defendants are the
New York, New Haven and Hartford Railroad Company,
described as a corporation organized and existing under the
laws of the State of Connecticut and located and having
its principal place of business in New Haven; the New
England Investment and Security Company, a voluntary
association; and the seven trustees, described as such and
as "designated as and acting under the name of the New
England Investment and Security Company." A sub-
stituted complaint was filed June 22d, 1908. The next day
all the defendants except the New York, New Haven and
Hartford Railroad Company filed an answer admitting the
truth of the complaint. A week later that Company filed
a lengthy answer, containing the same admission; reciting
the history of its organization and of that of sundry other
corporations to whose franchises it had succeeded; and al-
leging that it was not a corporation of any other State than
the States of Connecticut, Massachusetts and Rhode Island;
that its general offices were by its by-laws located in New

Haven; and that all meetings of its shareholders have always been held there. It was further averred that the New England Investment and Security Company held stocks and bonds of Massachusetts street-railway companies and of other similar voluntary associations holding such Massachusetts street-railway stocks and bonds, and acquired them mostly from the Consolidated Railway Company, a Connecticut corporation, nearly all of whose capital stock was owned by the New York, New Haven and Hartford Railroad Company; that the Consolidated Railway Company had acquired them in pursuance of agreements made and performed in Connecticut, and while owning them had kept them in its possession in New Haven; that the tripartite agreement of June 25th, 1906, for the guaranty of the preferred shares of the New England Investment and Security Company was executed at New Haven under the authority of the laws of Connecticut; that on May 8th, 1908, the Supreme Judicial Court of Massachusetts had delivered an opinion in a certain suit by the Attorney-General of Massachusetts against the New York, New Haven and Hartford Railroad Company, a copy of the record of which was made part of the answer; and that in consequence of the premises the defendant had refused to execute the guaranty demanded. On July 3d, a demurrer to this answer was filed and sustained, and judgment rendered for a specific performance against the New York, New Haven and Hartford Railroad Company, described as a corporation organized under the laws of Connecticut and located in New Haven; that the other defendants "take all steps within their power necessary to secure the delivery to the plaintiffs forthwith of said certificate with said guaranty agreement made and executed thereon"; and that each of the defendants be enjoined against failing to comply with the foregoing directions.

Of the individual defendants three are citizens of Connecticut, two of Massachusetts, one of New York, and one

of Rhode Island. The New England Investment and Security Company was described in the judgment-file as a voluntary association of New Haven.

Under the Title "Of Corporations," in the Revised Laws of Massachusetts, 1902, chapter 109 is entitled as "Of certain Powers, Duties and Liabilities of Corporations"; and § 17 of this chapter is as follows: "An executor, administrator, guardian, conservator or trustee shall represent the shares of his trust at all meetings of the corporation, and may vote as a stockholder."

*Edward D. Robbins,* for the appellant (defendant New York, N. H. & H. R. Co.).

*Frank T. Brown,* for the appellees (plaintiffs).

BALDWIN, C. J. The Superior Court, in an action brought in June, 1908, against the New York, New Haven and Hartford Railroad Company as "a corporation organized and existing under the laws of the State of Connecticut and located and having its principal place of business in the town of New Haven", has ordered it to perform specifically a contract to which it was a party, entered into in that town on June 25th, 1906. This contract, described in the complaint as Exhibit C, was for the guaranty by the Consolidated Railway Company, a corporation incorporated by this State, of certain certificates of ownership in the capital stock of a voluntary association of a few individuals, constituted in New Haven. Another contract of the same date, between this association and its members and the Consolidated Railway Company, designated as Exhibit A, showed that Exhibit C was executed for a valuable consideration.

The pleadings admit that the "Consolidated Railway Company on the 31st day of May, 1907, merged with and in itself the New York, New Haven, and Hartford Railroad Company under the name of the New York, New Haven, and Hartford Railroad Company, and by force of said

merger the defendant in this action, the New York, New Haven, and Hartford Railroad Company, succeeded to and became bound to perform the obligations expressed in said agreement, Exhibit A, and in said agreement, Exhibit C, to be performed by the Consolidated Railway Company."

The Consolidated Railway Company received charter power in 1905 "to guarantee the contracts . . . or other obligations of any other corporation, now or hereafter and wherever organized, which is engaged or authorized to engage in the transportation of persons or property or both . . . and of any . . . association . . . now or hereafter and wherever organized, which owns or controls at least a majority of the capital stock of any such other corporation." 14 Special Laws, p. 714, § 5. In March, 1907, it was provided in an amendment of the charter of the New York, New Haven and Hartford Railroad Company that it "may at any time hereafter merge, consolidate, and make common stock with any or all corporations engaged in transportation, wherever organized, whose property it shall hold under lease or a majority of whose capital stock it shall own; provided, however, that the corporations of this state controlled by the New York, New Haven and Hartford Railroad Company through such ownership of stock shall not so merge by virtue solely of the authority conferred by this resolution, except with the approval of at least two-thirds of all the outstanding stock of such controlled corporations respectively"; and in the following July, in an amendment of the charter of the Consolidated Railway Company, it was described as "having merged with and in itself the New York, New Haven and Hartford Railroad Company under the name of the New York, New Haven and Hartford Railroad Company." 15 Special Laws, pp. 41, 489.

We are relieved by the admissions in the pleadings from inquiring whether there has been a compliance with all the conditions prerequisite to making the obligation assumed by the Consolidated Railway Company on June 25th, 1906,

by the contract Exhibit C, an obligation of the New York, New Haven and Hartford Railroad Company, which is one of the defendants in this action. The only question presented for our determination is whether the Superior Court erred in enforcing the obligation, in view of the law of the State of Massachusetts affecting that defendant.

A private corporation may be defined as an association of persons to whom the sovereign has offered a franchise to become an artificial, juridical person, with a name of its own, under which they can act and contract, and sue and be sued; and who have either accepted the offer and effected an organization in substantial conformity with its terms (in which case a corporation *de jure* has been constituted), or have done acts indicating a purpose to accept such offer and effected an organization designed to be, but in fact not, in substantial conformity with its terms (in which case a corporation *de facto* has been constituted).

This suit is brought against the New York, New Haven and Hartford Railroad Company simply as a corporation of Connecticut, and judgment was rendered against it as such. A corporation by that name first came into existence on July 31st, 1872, by a merger and consolidation of the New York and New Haven Railroad Company, which was purely a Connecticut corporation, and the Hartford and New Haven Railroad Company.

A corporation by the latter name had been incorporated in Connecticut in 1833. 2 Private Laws, p. 1002. In 1835 its incorporators and their associates were offered a charter here by the name of the Hartford and Springfield Railroad Company, and authorized, as such, to build a railroad to the northern line of this State, and "thence to Springfield in the state of Massachusetts, provided the company shall obtain leave from the legislature of Massachusetts so to extend the same." 2 Private Laws, p. 1006. In 1839 that legislature granted a charter for the incorporation of a company to build a railroad from Springfield to the north line

of Connecticut, by the name of the Hartford and Springfield
Railroad Corporation. All persons who should become
stockholders in the Hartford and Springfield Railroad Com-
pany incorporated by Connecticut were to be stockholders
of this Massachusetts corporation, together with those who
might be its stockholders, and it was provided that when
the stockholders should assent by vote, "the said corpora-
tions shall become united into one corporation, by the name
of the Hartford and Springfield Rail-road Corporation,"
but not until similar provisions had been enacted by the
legislature of Connecticut, and the enactments should be
accepted by the stockholders of each corporation, and also
by the stockholders of the united corporation. Massachu-
setts Acts and Resolves, 1839, pp. 44-46, Chap. 101. In
1843 the Hartford and New Haven Railroad Company
agreed with the Massachusetts company to build the rail-
road from the Massachusetts line to Springfield under the
Massachusetts charter. In 1844 and 1847 the Massachu-
setts legislature enacted provisions looking to the union
of the two in one corporation, substantially similar to those
in the Act of 1839, except that the name of the new cor-
poration was to be the Hartford and New Haven Railroad
Company. Massachusetts Acts and Resolves, 1844, p. 162,
Chap. 28; id. 1847, p. 464, Chap. 244. The agreement of
1843 was carried out by 1845. In 1840 and 1845 the Gen-
eral Assembly of Connecticut gave authority for the union
of the Hartford and Springfield Railroad Company of Con-
necticut with the Hartford and Springfield Railroad Corpo-
ration of Massachusetts, and also for the union of the Hart-
ford and New Haven Railroad Company with the latter.
4 Private Laws, pp. 917, 967. It does not appear that the
Hartford and Springfield Company of Connecticut was ever
organized. In 1847 a union, by the name of the Hartford
and New Haven Railroad Company, was effected between
the Hartford and New Haven Railroad Company of Connec-
ticut and the Hartford and Springfield Railroad Corporation

of Massachusetts, by meetings of each corporation and also of the united corporation, held in Hartford, in this State.

The merger of 1872 was authorized by an Act passed by Connecticut in 1871, and one passed by Massachusetts April 5th, 1872. 7 Special Laws of Connecticut, p. 252; Massachusetts Acts and Resolves, 1872, p. 124, Chap. 171. These Acts were quite similar in terms, except that that of Connecticut provided that "said consolidated corporation shall at all times be subject to the power, control, and legislation of the general assembly of the state," while the corresponding section of the Massachusetts Act declared that "said consolidated corporation shall at all times be subject to the legislature of this state as to that portion of its road in this state, as heretofore; and shall be subject to the general laws of this state as to its whole road, so far as such laws may be applicable thereto."

In 1893 "An Act to incorporate the New York, New Haven and Hartford Railroad Company a corporation of this State" was passed in Rhode Island. It provided that "the stockholders of the New York, New Haven and Hartford Railroad Company, a corporation under the laws of the State of Connecticut and of the Commonwealth of Massachusetts, are hereby made a corporation under that name in this state, with the powers, privileges, and franchises given to that corporation by its charter so far as the same are not inconsistent with the laws of this state, and, so far as its road shall be situated in this State, shall have, exercise, and enjoy all the rights, privileges, and powers, and be subject to all the obligations, duties, and liabilities, given to and imposed upon the railroad corporations by the general laws of this state." Rhode Island Acts and Resolves, 1892–3, p. 377.

It thus appears that the original corporation with the name of the New York, New Haven and Hartford Railroad Company was an association of two artificial persons to which each of two sovereigns, by appropriate legislation

designed to have a concurrent effect, had offered a franchise to become an artificial juridical person by that corporate name, with power to act and contract and sue and be sued; that such offer was accepted by these artificial persons; and that they effected an organization in 1872, in substantial conformity with its terms.

Legislation of such a nature, mutually concerted by different States, does not, in the absence of legislation by Congress to the contrary, come within the prohibition of agreements or compacts between States contained in the ·Constitution of the United States. *St. Louis & San Francisco Railway* v. *James,* 161 U. S. 545, 562, 16 Sup. Ct. Rep. 621.

That one of the artificial persons to which the offers were addressed, was only a corporation of one of the States concerned, while the other had been formed by consolidations of corporations of each of them, is immaterial to the issues in this cause. A State may grant a franchise of incorporation to a corporation of another State. It may grant such a franchise to corporations chartered by different States as freely as to natural persons who are citizens of different States. *Bishop* v. *Brainerd,* 28 Conn. 289, 299.

Where several corporations, each of a different State, are so consolidated by the co-operating legislation of those States as to assume a new corporate form and name, the consolidated corporation is, in each of those States, in the eye of the law, as to acts there done or to be done, a corporation of that State.

Neither of the States in question could confer upon it the franchise of maintaining a corporate existence in any other State, nor add to nor diminish the powers that it can exercise in any other. *Ohio & Mississippi R. Co.* v. *Wheeler,* 1 Black (U. S.) 286, 297; *The Delaware Railroad Tax,* 18 Wall. (U. S.) 206, 228; *Nashua Railroad* v. *Lowell Railroad,* 136 U. S. 356, 373, 10 Sup. Ct. Rep. 1004.

Such a consolidation, voluntarily made by the constituent corporations, with the assent of the shareholders, comes

into effect, when the last step is completed, as the result of simultaneous action; and it is immaterial in which State, or at what date, any of these corporations was first incorporated. *Patch* v. *Wabash R. Co.*, 207 U. S. 277, 284, 28 Sup. Ct. Rep. 80.

The new form of corporate organization exists in each State by virtue of the laws of that State. If, acting within its powers there possessed, it incurs a liability to be there discharged, and upon which it is there sued, it cannot escape its enforcement on the ground that it is also a corporation in another State, under the laws of which no such liability could have been legally assumed.

If follows that the New York, New Haven and Hartford Railroad Company, as constituted by the consolidation of 1872, was, as a Connecticut corporation, subject to the laws of Connecticut with regard to liabilities here incurred. That in 1893 the consolidated corporation was chartered by Rhode Island did not lessen the authority of Connecticut in that respect. *Graham* v. *Boston, Hartford & Erie R. Co.*, 118 U. S. 161, 169, 6 Sup. Ct. Rep. 1009. That in 1907, under authority from this State, and without authority from either Massachusetts or Rhode Island, a merger was effected between the Consolidated Railway Company, a purely Connecticut corporation, and the New York, New Haven and Hartford Railroad Company, certainly cannot detract from the power of the courts of this State to regulate the conduct of the corporation now bearing the latter name, by compelling it to fulfil its obligations, here assumed, to do acts here to be performed. To a suit against it as a Connecticut corporation, it must respond as a Connecticut corporation. *Platt* v. *New York & Boston R. Co.*, 26 Conn. 544, 568.

It is true that a consolidated business corporation, constituted of corporations of different States, is in effect an incorporation of the individuals who are members of the original corporations, and that after the consolidation these individuals are the beneficial owners of all the rights, fran-

chises, and property of the corporation so constituted. The ultimate loss from a judgment diminishing those rights or property, in whatever State it may be rendered, falls on the same men, and in the same proportions. But this situation is one which the shareholders have voluntarily assumed. A shareholder in a corporation can, under certain circumstances, be forced out of it, if he declines to consent to a consolidation. He cannot be forced to enter any other corporation against his will. *New York, N. H. & H. R. Co.* v. *Offield*, 77 Conn. 417, 59 Atl. 510. No shareholder in the New York, New Haven and Hartford Railroad Company who consented to its becoming, by consolidations and mergers, a corporation composed of several corporations of different States, can complain that each State regulates its conduct, so far as concerns franchises which it has granted. As no shareholder can complain of this, all cannot; nor can the corporation, whether regarded as the same legal entity in each State or as a different legal entity. *Hart* v. *Boston, Hartford & Erie R. Co.*, 40 Conn. 524, 539. The defendant, therefore, cannot set up a defense of *ultra vires* in the courts of Connecticut, if the cause of action had its seat in Connecticut and arose from an act for doing which it had a Connecticut franchise.

In an action brought against the New York, New Haven and Hartford Railroad Company as a corporation of Massachusetts by the Attorney-General of that State, it has been decided by the Supreme Judicial Court of Massachusetts, that that corporation was prohibited by the laws of Massachusetts (see Massachusetts Acts and Resolves, 1906, p. 527, Chap. 463, Part 2, § 57) from directly or indirectly taking or holding the stock or bonds, or guarantying the bonds or dividends, of any street-railway company of Massachusetts. In the opinions delivered in that cause, it is stated that the defendant was, in each of the States from which it received a franchise of incorporation, a domestic corporation; that, as such, it was governed by the laws of

that State in all that it might do within its borders; and that it was entirely immaterial whether in the decree enforcing the prohibition of the Massachusetts statute, it should be described as a corporation existing under the laws of Massachusetts, or as one existing under the laws of Massachusetts, Connecticut and Rhode Island. *Attorney-General* v. *New York, N. H. & H. R. Co.*, 198 Mass. 413, 84 N. E. 737, 201 Mass. 370, 87 N. E. 621. The decree, as entered, was against "the defendant . . . and its officers, directors, attorneys, agents and employees, respectively and collectively"; and it was confirmed by the full court, notwithstanding an objection on the part of the defendant that "the New York, New Haven and Hartford Railroad Company, as a corporation of the State of Connecticut, in its exercise (by means of acts not performed within this Commonwealth) of franchises and powers granted to it by said State of Connecticut and the laws thereof, is not within the territorial jurisdiction of this Commonwealth, nor subject to the laws thereof; and said decree in its enforcement against the defendant, in so far as it affects the said corporation of Connecticut, or the defendant's officers, directors, attorneys, agents, and employees, acting in Connecticut in behalf of said corporation of Connecticut, under and by virtue of the laws of said State, will deprive, and does deprive, the defendant of property without due process of law, and will and does deny to the defendant the equal protection of the laws, thus violating the rights of the defendant under the Fourteenth Amendment of the Constitution of the United States."

The defendant had answered as a corporation under the laws of Massachusetts, that it owned and operated a railroad about six miles long between Springfield and the Connecticut State line, connecting with railroads of other States, and forming part of a continuous post-road of the United States and of a continuous line of inter-State commerce; and also making, among others, the following allegations:—

"Second. Its stockholders are also corporations, under the same name and with the same capital stock, under the laws of the State of Connecticut and of the State of Rhode Island, and as such corporations own and operate more than six hundred and twenty-two miles of railroad in those States; and it says that it has all the franchises, rights, powers and privileges granted to or acquired by its stockholders as such corporations, both under the laws of the Commonwealth and under the laws of Connecticut and of Rhode Island, and that whatever it may have done in the premises has been authorized by its franchise, rights, powers and privileges in this Commonwealth.

"Third. It has a usual place of business in the City of Boston, but the corporate franchise and business of its shareholders, excepting only the franchise for and the business of maintaining and operating its railroad in the Commonwealth, and the maintenance and operation of certain roads leased to it in the Commonwealth, have been and are exercised outside of the Commonwealth.

"Fourth. The statutes of the Commonwealth referred to in the information are not applicable to the exercise of the franchise and the conduct of the business of its stockholders as corporations outside of the Commonwealth, and it has not done any act or thing in the exercise of its franchise or in the conduct of its business under the laws of the Commonwealth as to that portion of the road of its stockholders in the Commonwealth contrary to the laws thereof."

This answer was evidently framed on the theory that the defendant's shareholders held three franchises of incorporation each from a different State, and that it was answering, as it had been sued, as the artificial person constituted of its shareholders in their quality of grantees of the Massachusetts franchise.

If the injunction which was decreed could be fairly construed to apply to acts of the New York, New Haven and Hartford Railroad Company that might be done by or for

it as a Connecticut corporation agreeably to the laws of that State, or in Rhode Island as a Rhode Island corporation agreeably to the laws of that State, it seems obvious that questions of jurisdiction and of constitutional law might be raised, which would not arise if the decree applied only to acts by or for the company as a Massachusetts corporation, that might be done in or purport to affect rights or property having a *situs* in that State. See 1 Wharton on Private International Law, § 477. In view of these considerations, the observation of the Supreme Judicial Court of Massachusetts that it was entirely immaterial whether the defendant should be described in the decree as a Massachusetts corporation, or as one existing under the laws of three States, apparently implies that it enjoined only action by or for it in the capacity of a corporation existing under the laws of Massachusetts. See *Davis v. New York & N. E. R. Co.*, 143 Mass. 301, 9 N. E. 815.

But whether this be so, or not, the courts of this State, in dealing with a Connecticut corporation, cannot accept as an excuse for a refusal to perform a contract, the obligation of which upon it, as such corporation, it expressly admits, the plea that to perform it might violate an obligation which its shareholders have assumed in accepting and acting as a corporation under a Massachusetts franchise.

We are not at present concerned with the question whether, if the guaranty which the defendant has been required to execute by the judgment appealed from should ultimately involve it in pecuniary loss, the holder of the guaranteed certificate could enforce his rights in an action against it as a corporation of any other State. See *Louisville Railway Co.* v. *Louisville Trust Co.*, 174 U. S. 552, 576, 19 Sup. Ct. Rep. 817. Nor do we find it necessary to consider the nature of the voluntary association on whose certificates of "stock" the guaranty is to be indorsed, nor whether it was within the powers of the defendant to agree to make the guaranty. These points are also settled, for

the purposes of this appeal, by the admissions of the answer; and we are the less disposed to notice them because the manner in which this cause was brought before and disposed of by the Superior Court, as well as the frank statements of counsel at the bar, indicate that it is of the nature of a friendly suit.

One of the so-called "Formal Claims" made by the defendant in its brief was that "by force of the rules of public law requiring recognition by every State of the sovereignty of other States (which rules constitute a part of the law of this State), the courts of Connecticut cannot make such an order to the defendant as is made by the judgment appealed from, because said judgment involves, as an essential element thereof, the commanding of a corporation of Massachusetts to violate the laws of Massachusetts." It is a sufficient answer to this contention (whether the principle of public law which it asserts be or be not, with reference to the mutual relations of the States of the American Union, in all respects, as so stated) that the injunction issued by the Superior Court was addressed to the New York, New Haven and Hartford Railroad Company solely as a corporation of Connecticut, to compel the doing of an act in this State which, by a contract made in this State and to be performed here, it had, according to its own admission, bound itself to do. This order by an authority in which was reposed, for such purposes, the sovereignty of this State, was not antagonistic to any other sovereignty, and contemplated no encroachment on any other.

The judgment appealed from was for the relief asked, namely, a specific performance and an injunction. As the demurrer did not extend to the claims for relief, we do not inquire whether the plaintiffs could have resorted to an action for damages.

There is no error.

In this opinion the other judges concurred.