OSWALT INDUSTRIES, INC., a Kansas Corporation, Plaintiff,

v.

Thomas W. GILMORE, Jr., et al., Defendants.

Civ. A. No. W–3986.

United States District Court
D. Kansas.

Jan. 10, 1969.

---

Corley & Braun, Garden City, Kan., for plaintiff.

Foulston, Siefkin, Powers, Smith & Eberhardt, Wichita, Kan., and Gignilliat & Abbott, Savannah, Ga., for defendants.

## MEMORANDUM SUSTAINING MOTIONS

WESLEY E. BROWN, District Judge.

A jurisdictional issue is presently before the Court upon defendants' motion, filed under the provisions of Rule 12, Fed.R.Civ.Proc. for order quashing the purported service of summons, upon the ground of insufficiency of process and lack of in personam jurisdiction [in this Court]. The defendant, referred to as Gilmore, further requests that the action be dismissed for lack of jurisdiction of his person.

The burden of proving that this Court has *in personam* jurisdiction rests upon Oswalt. Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., (5 Cir. 1964) 332 F.2d 135, cert. den. 379 U.S. 915, 85 S.Ct. 262, 13 L.Ed.2d 185; Dahlberg Co. v. American Sound Products, Inc., (D.C.Minn.1959) 179 F.Supp. 928.

Plaintiff, referred to as Oswalt, a Kansas corporation, with its principal place of business located at Garden City, Kansas, is a manufacturer of farm equipment. It brought this diversity action against Thomas W. Gilmore, Jr., a resident and citizen of the State of Georgia, individually, and as partner with Winifred R. Gilmore, now deceased, in the business known as "Gilmore Brothers, Fern Crest Plantation." It also appears that Gilmore is the Executor of the Will of his deceased wife and partner, Winifred Gilmore. The complaint is in the nature of a suit on account for an alleged debt incurred by the partnership for merchandise sold by Oswalt, and the amount in controversy is stated to exceed the sum of $10,000. Its claim is for $13,670.87, less credit of $2,638.06 for returned goods, plus $632.24 in shipping charges which were incurred by it on Gilmore's account.

The file reflects that Gilmore in his various capacities as defendant, was personally served with summons on April 25, 1968 by a United States Marshal at his home address, R. F. D., Sandersville, Georgia.

Oswalt's complaint is directed to sales within the period of March 10, 1966, and November 23, 1966, and a statement attached to the complaint reflects charges for parts and equipment purchased February–November, 1966. This equipment was manufactured at Oswalt's plant in Garden City, Kansas. In its second claim for relief, Oswalt asserts that on or about June 8, 1967, Gilmore shipped to it at Garden City certain new parts and equipment purchased from Oswalt, and Oswalt agreed to accept the same and allow credit therefore in the sum of $2,-638.06, but that at the time this new equipment was returned, Gilmore also included certain used equipment for the purpose of having Oswalt sell the same on his account. Oswalt alleges that such equipment is worn out and not marketable, and tenders back the same. The claim for repayment of the freight bill is attributable to the returned goods.

Oswalt does not controvert any factual statement contained in affidavits filed by Gilmore, but has moved to suppress his first affidavit on the ground that it relates to facts going back to the year 1960, while plaintiff's complaint is directed to events occurring after March 10, 1966. The history of transactions between Gilmore and Oswalt bears relevance to a proper determination of whether or not Gilmore was transacting any business for the purposes of the Kansas statute and the court has therefor considered both of Gilmore's affidavits.

Gilmore, individually, and through the partnership, operates a farm wholly within Washington County, Georgia; the principle enterprise is cattle production. Gilmore first obtained knowledge of Oswalt's equipment through an advertisement which appeared in a 1960 issue of the *Farm Quarterly*, delivered to his farm at Sandersville, Georgia; after noting the advertisement, he telephoned Oswalt and received photographs and other literature describing the equipment. Thereafter, an Oswalt salesman called upon Gilmore at his home in Georgia, and the first item of equipment which Gilmore purchased was a forage box, delivered in Georgia by Oswalt's sales representative in 1960. Thereafter, Oswalt's salesmen called upon Gilmore at his home in Georgia, taking orders, and servicing equipment purchased from it. It was the custom between the parties for Oswalt's salesmen to take verbal orders from Gilmore in Georgia, to ship direct to the farm, freight collect, on open account. Some equipment was also purchased through Oswalt's distributor at Americus, Georgia. Gilmore avers that his sole residence and place of business is, and always has been in Washington County, Georgia; that he has never done any business in the State of Kansas, and that in fact he has been to Kansas but once in his life—that on January 10, 1964, for one day. On that date, he visited Oswalt's facilities, at its invitation, to examine new manufactur-

ing facilities which were under construction, but no purchases were made during that visit. Copies of bills of lading and invoices attached to Gilmore's affidavit reflect the course of dealings between the parties, as described by Gilmore.

In addition, by letter of July 12, 1968 Oswalt advised the Court that:

"Subsequent to the filing of our action we determined that in addition to what was presented on the facts before the court the defendants had shipped back to Oswalt Industries certain equipment previously purchased by the defendants from Oswalt Industries for credit and/or sale in behalf of the defendants. This equipment is now located on the Oswalt Industries property, the title to which is in the defendants. Since the defendants have shipped this property back in to Kansas to place the same with the plaintiff for re-sale in behalf of the defendants we construe the same to constitute 'transactions' within the State of Kansas and that the same fall within the rules of the Woodring case."

It further asserts that telephone conversations were had between the parties concerning the returned equipment, and that although attachment papers covering the same were filed in this case, for the purpose of invoking the in rem jurisdiction of the court, Oswalt is "abandoning the attachment theory" at present, to await the decision of the court on the motion to quash.

The validity of the out-of-state service of summons in this case depends upon the provisions of the Kansas "long-arm" statute, K.S.A. 60–308(b) (1), which provides:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as

to any cause of action arising from the doing of any of said acts:

"(1) The transaction of any business within the state; * * *

Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this subsection (b) of this section, may be made by personally serving the summons upon the defendant outside this state * * * with the same force and effect as though summons had been personally served within this state * * *."

Rule 4(d) (7), (e), (f), Fed.R.Civ. Proc. confers jurisdiction on this court if the service here in question is in accordance with the applicable Kansas law, to the extent that such service would be consistent with principles of due process of law under the Constitution of the United States. The questions thus before the court are: 1. Whether Gilmore has "transacted any business" in the State of Kansas within the meaning of K.S.A. 60–308(b) (1), as interpreted by the Supreme Court of Kansas; and 2. If so, whether or not assumption of jurisdiction over the nonresident would be consistent with federal principles of due process of law. The first question is to be determined by state law—the second by federal law. See, Arrowsmith v. United Press International (2 Cir. 1963) 320 F.2d 219, 223, 6 A.L.R.3d 1072; Agrashell, Inc. v. Bernard Sirotta Co. (2 Cir. 1965) 344 F.2d 583; Aftanase v. Economy Baler Co., (8 Cir. 1965) 343 F.2d 187, 192; and see, Anno. 20 A.L.R. 3d 1201, 1210, 1223.

The only reported state opinion construing the provisions of K.S.A. 60–308 (b) (1) which has been cited to this Court is Woodring v. Hall (1968) 200 Kan. 597, 438 P.2d 135. It appears to be a case of first impression as to a definition of the term "transacting business." The case involved a suit upon a note filed by defendant's former mother-in-law, for recovery of money lent to defendant from December, 1952 through

April, 1962 for the purpose of living and school expenses. At the time the money was advanced, defendant was a resident of Kansas, but after divorce from his wife in a Kansas Court in 1962, defendant moved to Texas, where personal service was had upon him in 1965. Default judgment was entered, and the case came up on defendants' motion to set aside the judgment upon the ground that the court lack in personam jurisdiction. In ruling that defendant had "transacted business" in the state of Kansas for the purposes of service by out of state process, the court made the following comments upon the Kansas statute:

> "In a broad sense, 'business' is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires.

> \*   \*   \*   \*   \*   \*

> "The statute may not be given a restrictive interpretation based upon the Kansas 'doing business' cases \* \* \*. The phrase 'doing business' is not to be confused with the 'transaction of business' under minimal contacts required by the due process clause. [200 Kan. at 607, 438 P.2d at 144].

In finding that assumption of jurisdiction did not offend "traditional notions of fair play and substantial justice," the court gave weight to the fact that the law creating the claim for relief was that of Kansas; both parties resided in the state when the loans were made, and the obligation to repay was to be performed in Kansas, per defendant's written acknowledgment of the debt in the divorce proceedings, and further, the fact that defendant had used the Kansas courts to dissolve his marriage. Under all these circumstances, the court found that defendant had "transacted busi-

ness" in Kansas, for "[n]ot only did the transaction upon which the action was based have substantial connection with Kansas, but the defendant's contacts in this state were more than minimal and were such that the maintenance of this action did not offend traditional notions of fair play and substantial justice." 200 Kan. at 609, 438 P.2d at 145.

Although not factually similar to the issues here, the Court has also considered the opinion of the Kansas Supreme Court in Tilley v. Keller Truck & Implement Corp. (1968) 200 Kan. 641, 438 P.2d 128, decided the same day as the *Woodring* case. This was a "products-hazard" tort claim in which the court considered the propriety of assuming jurisdiction over a non-resident Colorado dealer who sold the allegedly defective truck involved in a Kansas accident. Out-of-state process here was based upon part (b) (5) (ii) of K.S.A. 60–308.[1] In ruling that there was no jurisdiction, the Court, as in *Woodring*, viewed the permissible reach of the state statute in terms of due process requirements of the 14th Amendment to the United States Constitution. In particular, the Court noted, at pp. 649–650, 200 Kan. p. 134 of 438 P.2d:

> "The Kansas statute was designed to exert *in personam* jurisdiction in those fact situations which are within the confines of the substantive due process requirement."

this because, the Kansas legislature must be presumed to have had in mind the United States Supreme Court's decisions defining the due process clause.

The Kansas court reviewed pertinent federal decisions for the purpose of ascertaining proper guidelines for establishing due process limitations, finding them to be: a) "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and sub-

---

1. Causing injury to persons or property within the state by a non-resident who processes, services, or manufactures products which were used or consumed within the state.

stantial justice,' " [2] b) interest of the forum; [3] c) quantity of the contracts; [4] d) the presence of a "substantial connection" with the forum; [5] and e) "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." [6]

In *Tilley*, the Court found that K.S.A. 60–308 was constitutional upon its face, although it could "conceivably be applied by a court in a particular fact situation so as to reach an unconstitutional result * * *." 200 Kan. at 650, 438 P.2d at 135.

The statements of the factual situations before the Kansas court in *Woodring* and *Tilley* clearly reflect that those cases furnished no literal guide for application to the factual circumstances presented by the Oswalt-Gilmore transactions. We do, however, find persuasive guidance from the court's reasoning in those two cases which indicates that the Kansas court was ever conscious that application of 60–308 was to be governed by fundamental rules of due process under the federal constitution, and guided by traditional notions of fair play and substantial justice. By its consideration of Hanson v. Denckla, supra, f.n. 6, 357 U.S. 235, 251, 78 S. Ct. 1228, 2 L.Ed.2d 1283, 1296, the state court was fully aware that although the trend is towards expanding jurisdiction over non-residents, and improved communications and transportation have made the defense of a suit in

a foreign tribunal less burdensome, "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * *" 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296. [7]

In reaching a determination upon Gilmore's motion, we have considered National Bank of America at Salina v. Calhoun (D.C.Kan.1966) 253 F.Supp. 346 [cited in *Woodring*, 200 Kan. at 607, 438 P.2d 135], an opinion of Judge Templar of this District.

The Court has also reviewed a 1968 Annotation appearing in 20 A.L.R.3d 1201 which discusses the validity, as a matter of due process, of state legislation conferring jurisdiction over nonresidents on the basis of isolated business transactions within the forum. The synopsis of cases involving sales transactions, collected at pp. 1245–1263 therein, indicates that while a buyer is frequently successful in asserting jurisdiction in his forum, in suits against his vendor—the *seller* is not so successful in invoking his jurisdiction in suits

2. International Shoe Co. v. Washington (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102.

3. Travelers Health Ass'n v. Virginia (1950) 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

4. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

5. McGee v. International Life Ins. Co., (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 223, 226.

6. Hanson v. Denckla, (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283, 1298, rehear. den. 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92.

7. A succinct summation of the ruling of Hanson v. Denckla was provided by Judge Jones of the 5th Circuit in Dooly v. Payne (1964) 326 F.2d 941, 943, that Hanson "teaches that, although the door of non-resident jurisdiction has been opened wider by International Shoe and McGee, it has not been removed from its hinges * * *."

against his customer. In each case in which the customer has been held to the jurisdiction of his vendor's forum, it appears that the buyer had some significant contact with the forum state, through personal visits to inspect the merchandise, to take delivery, or by execution of necessary documents within the forum. See, e. g., Electronic Mfg. Corp. v. Trion, Inc. (S.D.Ind.1962) 205 F.Supp. 842; and Purdy Co. v. Argentina (C.A. 7 Cir. 1964) 333 F.2d 95, cert. den. 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 [letter of credit deposited with forum bank—agent authenticated documents; held insufficient contact, relationship purely one of "purchaser and seller"[8] It has been held that mere contact by mail or phone between the buyer and seller is not sufficient contact within the forum. See Chassis-Trak Inc. v. Federated Purchaser, Inc. (D.C. N.J.1960) 179 F.Supp. 780, 791; Scheidt v. Young (3rd Cir. 1968) 389 F. 2d 58 (Mail and phone contact deemed "peripheral"), and compare Harry Winston, Inc. v. Waldfogel (D.C.N.Y. 10/22/68) 292 F.Supp. 473.

In considering the course of dealing between Oswalt and Gilmore this court is unable to find that Gilmore had any "substantial connection" with the State of Kansas; his orders were placed in the State of Georgia with plaintiff's salesman who sought him out for the purpose of furthering plaintiff's economic condition; the goods were delivered in Georgia; Gilmore's one visit to Kansas was initiated by plaintiff, and there is no indication whatever that by this act Gilmore sought to avail himself of the privilege of conducting activities within the State, for the purpose of invoking the benefits and protections of the law of that State. The court deems that negotiations by telephone between Georgia and Kansas are of no significant weight in a determination of whether Gilmore was transacting any business in Kansas. Likewise, when considered in the context of the quality of the sales transactions between Oswalt and Gilmore, the court finds that the shipment by Gilmore of plaintiff's merchandise back into Kansas, for the purpose "of credit and/or resale" is so closely connected with other transactions between the parties that, under all of the circumstances, it cannot be said that this factor is of any significant weight in our determination.

The decisions of the Kansas Supreme Court in *Tilley* and *Woodring, supra,* indicate that K.S.A. 60–308 is to be construed in terms consistent with due process considerations under the federal constitution. In view of this, the Court finds that Gilmore did not have those minimum contacts within the State of Kansas which constitute the transaction of business within the meaning of K.S.A. 60–308(b) (1). To rule otherwise in our opinion, would be to extend the *in personam* jurisdiction of the State of Kansas towards the four corners of the United States, and indeed the world, subjecting mail-order buyers of every type to the risks inherent in such a broad exercise of power. The jurisdiction which Oswalt would have this Court assume would be applicable in principle to every customer who deals at a distance with a Kansas vendor. Such a principle is not consistent with the traditional notions of fair play and substantial justice.

The motions of Gilmore will be sustained. Prevailing counsel will prepare, circulate and submit an Order consistent with the views set forth herein.

8. "A nonresident purchaser from an Illinois vendor, without other contact with Illinois, is not by reason of [the payment device] subjected to jurisdiction of the Illinois courts and thus made amenable to extra-territorial service of process." 333 F.2d at 98.

The Kansas statute, with a few minor changes, was "lifted bodily" from the Illinois Act. Woodring v. Hall, *supra,* 200 Kan. at 600, 438 P.2d 135. The Kansas court "has recognized and applied the rule that a statute adopted from another state carries with it the construction placed upon it by the courts of that state." *Woodring, supra,* p. 601, 438 P.2d p. 140.