No. 45,414

J. D. White, *Appellee*, v. Amaret C. Goldthwaite, *Appellant.*

(460 P. 2d 578)

Opinion filed November 8, 1969.

*William Tinker*, of Wichita, argued the cause, and *Arthur W. Skaer, Hugh P. Quinn, Alvin D. Herrington, Richard T. Foster, Lee H. Woodard, William A. Hensley, William Tinker, Jr.,* and *Clark R. Mandigo, II,* all of Wichita, were with him on the brief for the appellant.

*Robert Martin,* of Wichita, argued the cause, and *William Porter, K. W. Pringle, Jr., W. F. Schell, Dale Fair, William L. Oliver, Jr., William V. Crank, Thomas C. Triplett, Wayne W. Wallace, John P. Woolf,* and *Douglas K. Dusenbury,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action for the recovery of money. In a trial to the court plaintiff J. D. White prevailed and defendant Amaret C. Goldthwaite has appealed from the judgment rendered against her.

The principal question upon appeal involves the validity of the service of summons upon defendant under our long-arm statute.

Plaintiff commenced the action by filing his petition in which, so far as pertinent here, he alleged that on or about March 4, 1966, defendant by and through her agent John W. Porter, Jr. agreed to pay to plaintiff the total sum of $26,560 to repay a loan of $1,560 and $25,000 as the purchase price on a stock option on certain shares of the capital stock of International Disposal Corporation, payment of the $26,560 to be made March 10, 1966; that defendant refused to make the payment.

Personal service of summons was had upon defendant in Oklahoma County, Oklahoma. She duly filed her answer in which she denied making the alleged agreement and also denied she had been properly served with summons because she had not submitted to the jurisdiction of the Kansas courts.

Upon issues thus joined, trial was had to the court which made findings of fact and conclusions of law and rendered judgment *in personam* against defendant for $26,560 as prayed for.

Jurisdiction to render such a judgment is to be sustained, if at all, by reason of K. S. A. 60-308 (*b*), (1), which provides that a nonresident, who in person or through an agent or instrumentality transacts any business within the state, submits himself to the jurisdiction of the Kansas courts.

The evidence upon this issue, viewed in the light most favorable to plaintiff, reveals the following: Plaintiff was a resident of Wichita and was licensed to practice law in Kansas; he also conducted an oil and investment business in Kansas, Oklahoma and elsewhere; he was principally engaged in the oil business in Oklahoma; he maintained a business office and an apartment in Oklahoma City. Defendant resided in Oklahoma City. John W. Porter,

Jr. (found by the trial court to be defendant's agent), resided in Oklahoma City; he was an investment broker who counseled with defendant about her investments.

In August, 1965, defendant agreed to purchase from a Mr. Cook an interest in some oil and gas leases in Oklahoma, obligating herself to pay the sum of $160,000. She paid Cook $40,000 and sought to borrow the balance elsewhere. In October, 1965, Porter approached plaintiff in Oklahoma City in behalf of defendant in an effort to borrow $120,000 for her. As a result plaintiff drafted a written agreement which Porter presented to defendant who signed this agreement at her home on November 1, 1965. The agreement provided that plaintiff was to loan, or cause to be loaned, to defendant $120,000, $60,000 to be advanced before November 5, 1965, and the remainder before November 15, 1965. The loan was to be repaid within six months and was to draw eight percent interest. Additionally, plaintiff was given an option to purchase from defendant 15,000 shares of International Disposal Corporation stock at $5.00 per share. Defendant also signed a promissory note payable to plaintiff and as collateral pledged certain Oklahoma farm land and 75,000 shares of International Disposal Corporation stock owned by her. The agreement also provided that plaintiff was to deliver a check for $1,000 to defendant to be considered as liquidated damages in the event plaintiff was unable to deliver the loan to defendant. This check was attached to the agreement when it was presented to her for signature. Following execution of all the instruments defendant gave them to Porter who in turn delivered them to plaintiff at his Oklahoma City office.

Upon receiving defendant's stock certificates plaintiff brought them to Wichita, then returned 65,000 shares to his Oklahoma City office for safekeeping. He obtained a loan for $60,000 at a Wichita bank by reason of which he delivered $60,000 to Porter at Oklahoma City.

Under a prior business arrangement (which had no connection with the case at bar) plaintiff had an escrow agreement at another Wichita bank to secure performance of a drilling contract in Turkey. As collateral for this agreement he had pledged certain Woods Industries stock certificates which he then owned. Upon receiving defendant's International Disposal Corporation certificates plaintiff substituted as collateral at the second bank 10,000 of those

shares for the Woods Industries Stock, withdrawing the latter and using them as collateral for the $60,000 loan obtained at the first bank. Defendant had no knowledge of plaintiff's use of her stock as collateral at the time plaintiff made the substitution.

Plaintiff was unable to secure the second $60,000 which was to be loaned defendant and he informed Porter of this fact about November 15, 1965. After some negotiations over a period of time, during which Porter and defendant each endeavored to secure the second $60,000 elsewhere, the contract was modified; the 65,000 shares of stock were eventually returned to defendant through Porter, and defendant was to raise the needed $60,000 herself; inasmuch as plaintiff had furnished only one-half the needed funds his stock option was reduced one-half, that is, from 15,000 to 7,500 shares. All these negotiations were carried on in Oklahoma with Porter acting on behalf of defendant.

Meanwhile, about the middle of December, 1965, Porter had telephoned plaintiff in Wichita to the effect that defendant was short of cash for the Christmas season; that oil payments in the amount of $1,560 had accumulated on the oil leases but this amount was unavailable to her because she had not been able to complete her purchase; Porter suggested a loan in this amount; plaintiff agreed and directed that the notation on his $1,000 check deposited with defendant be altered from "pertaining to option agreement" to "portion of oil payment loan", which was done, and the check was cashed by defendant; plaintiff mailed a cashier's check in the sum of $560.00 to defendant.

It appears that defendant's vendor, Mr. Cook, twice agreed to an extension of time in which she could pay for her lease interest, and meanwhile the relation between plaintiff and defendant apparently remained amicable until a rise in price of International Disposal Corporation stock.

On March 10 plaintiff and Porter conversed in Oklahoma City regarding the purchase by defendant of plaintiff's stock option. Porter told plaintiff defendant would pay him $25,000 for the option. Later plaintiff told Porter by telephone that he would accept the offer and Porter told plaintiff "he would get me a check". The two also discussed repayment of the $60,000 loan defendant still owed plaintiff. Porter later told plaintiff he didn't have the $25,000 check and couldn't do anything with defendant anymore because she didn't think plaintiff should have anything beyond repayment of the loan.

On March 15, 1966, Porter met plaintiff at a Wichita bank and delivered a check in payment of the $60,000 loan with interest. Porter also had two other checks in his possession, drawn by defendant on her personal account in an Oklahoma bank, both payable to plaintiff, one for $10,000 and one for $5,000. These checks were to be used by him to negotiate a purchase of plaintiff's stock option for a sum not to exceed $15,000. However, plaintiff refused to accept anything less than the $25,000 he contended had been agreed upon. During the entire transaction plaintiff had no personal contact with defendant, all discussions and negotiations having been solely between plaintiff and Porter, defendant's agent.

The first question to be decided is whether defendant was subject to the jurisdiction of the trial court by reason of the "transaction of any business within this state" as contemplated by K. S. A. 60-308 (*b*) (1). Upon this issue the court made only a general ruling that it had *in personam* jurisdiction over defendant.

In *Woodring v. Hall*, 200 Kan. 597, 438 P. 2d 135, and *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P. 2d 128, this court discussed the history and philosophy of K. S. A. 60-308.

In *Woodring* it was stated the statute reflects legislative intention to exert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the fourteenth amendment to the federal constitution, and whether due process is satisfied depends upon the nature and quality of the activities of the defendant, which must be determined on a case by case basis.

In *Tilley* pertinent federal decisions were reviewed to ascertain guidelines for due process limitations. They were found to include: Certain minimum contacts with the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice (*Internat. Shoe Co. v. Washington*, 326 U. S. 310, 90 L. ed. 95, 66 S. Ct. 154, 161 ALR 1057); the interest of the forum in protecting its citizens, and itself, in the area of the subject matter which is the basis of the claim for relief (*Travelers Health Assn. v. Virginia*, 339 U. S. 643, 94 L. ed. 1154, 70 S. Ct. 927); the quantity and quality of defendant's contacts within the forum state (*Perkins v. Benguet Mining Co.*, 342 U. S. 437, 96 L. ed. 485, 72 S. Ct. 413); a substantial connection with the state justifying *in personam* jurisdiction (*McGee v. International Life Ins. Co.*, 355 U. S. 220, 2 L. ed. 2d 223, 78 S. Ct. 199); and some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections

of its laws (*Hanson v. Denckla,* 357 U. S. 235, 2 L. ed. 2d 1283, 78 S. Ct. 1228). (pp. 644, 645.)

From the foregoing cases it appears there are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation (see *Tyee Constr. Co. v. Dulien Steel,* 62 Wash. 2d 106, 381 P. 2d 245; also, anno. 20 ALR 3d 1201).

Plaintiff, as the party invoking the jurisdiction of the Kansas court, has the burden of proving existence of that jurisdiction. In his brief he summarizes the facts he contends meet the jurisdictional criteria, as follows:

"The lender is a resident of the state of Kansas, and the money for the loan was obtained from a Kansas bank. Part of the International Disposal Corporation stock, which was pledged by Goldthwaite as collateral for the loan, was held in Kansas. Porter telephoned White in Kansas requesting that an additional $1,560.00 loan be made to Mrs. Goldthwaite. Porter agreed to pay the $25,000.00 to White in Kansas, although this agreement was never consummated. The cause of action arose directly from a series of transactions, part of which occurred in the state of Kansas."

Plaintiff was a resident of this state; however, he maintained living quarters and an office for his oil and investment business in Oklahoma and it was there defendant made her initial solicitation and, with two exceptions, all subsequent contacts with plaintiff throughout the entire series of events. True, the money loaned defendant by plaintiff, in carrying out a part of his contract obligation, came from a Kansas bank but it was plaintiff who obtained that loan, and its repayment at the Kansas bank was plaintiff's obligation, not defendants. None of defendant's activities has been offensive to a Kansas bank. So far as she was concerned plaintiff might have gone anywhere to procure the money he loaned her.

It is also true plaintiff removed part of defendant's collateral (the IDC stock) to Kansas. The difficulty is these were all activities of plaintiff, not defendant, and were of such nature as to serve his convenience and benefit rather than hers.

In *Hanson v. Denckla*, supra, the federal supreme court pointed out: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (p. 253.)

Plaintiff says defendant agreed to make the $25,000 payment for the purchase of his stock option in Kansas. We have combed the record and are unable to find factual basis for this statement. This oral agreement, which incidentally was controverted by defendant's evidence, is established only by plaintiff's testimony and we find no mention as to where payment was to take place, only that "he [Porter] would get me a check". Porter did telephone plaintiff in Wichita requesting the $1,560 loan which was eventually consummated in Oklahoma, and on March 15 he did go to Wichita to pay the $60,000 debt which was never in controversy. The initial agreement, drafted by plaintiff, contained nothing as to where repayment was to be made. While in Wichita, Porter had with him two of defendant's checks with which he attempted, unsuccessfully, to negotiate settlement of the option dispute, or from plaintiff's viewpoint, to discharge a $25,000 obligation which had already matured for not over $15,000.

Arrayed against this is much evidence, which we will not repeat, that the entire transaction was essentially an Oklahoma enterprise and the claim for relief arose out of defendant's activities in Oklahoma, rather than Kansas. Her acts in Kansas, through her agent, appear to be incidental rather than essential to the whole bit of bargaining. They afforded her nothing in the way of enjoyment of any particular privilege or protection under Kansas law.

Quite a different situation was present in *Woodring v. Hall*, supra. There, jurisdiction over a nonresident was sustained in a suit upon a note which evidenced certain loans made by defendant's former mother-in-law for the purpose of defraying his expenses at the Kansas University School of Medicine. Weight was given to the fact the law creating the claim for relief was that of Kansas; both parties resided in Kansas when the loans were made; the obligation

to repay was to be performed in Kansas in accord with defendant's written acknowledgment of the debt in his divorce proceeding; and further, the fact defendant had used the Kansas courts to secure his divorce.

Here, defendant violated no Kansas statute, she breached no Kansas contract—about all she really did on her single entry in Kansas was to attempt to compromise or settle a disputed claim which had arisen elsewhere. This type of contact hardly suffices to establish any legitimate interest of the state in providing a forum for trial. Viewing all the circumstances of the case, we conclude the claim sued upon is not sufficiently connected with defendant's transaction of business within the state to warrant assumption of *in personam* jurisdiction over her by our courts.

As the case has been presented to us, we need make no determination of defendant's other complaints upon appeal. Accordingly the trial court's judgment is reversed with directions to set aside the *in personam* judgment rendered against defendant.

Judgment reversed with directions.

APPROVED BY THE COURT.

SCHROEDER, J., dissents.