**William L. STONECIPHER, Plaintiff,**

v.

**Edward V. SEXTON and Joseph C. Meier, d/b/a Sexton & Meier, a co-partnership, Defendants.**

**Civ. A. No. KC–3309.**

United States District Court, D. Kansas.

Feb. 24, 1972.

Robert H. Bingham, of Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, Kansas City, Kan., for plaintiff.

John H. Johntz, Jr., of Payne & Jones, Chartered, Olathe, Kan., Marshall A. Lehman, of Mariscal & Weeks, Phoenix, Ariz., for defendant Meier.

## MEMORANDUM OPINION

O'CONNOR, District Judge.

This is a malpractice action brought against two attorneys who are residents of the State of Arizona and who formerly were engaged in the practice of law as partners in that state. Defendant Meier, has moved to quash service of process and dismiss the complaint against himself and the partnership of Sexton & Meier. The basis of defendant's motion is the want of personal jurisdiction. [K.S.A. 60–308(b)].

The burden of establishing jurisdiction in this case clearly rests with the plaintiff, a Kansas resident. Oswalt Industries, Inc. v. Gilmore, 297 F.Supp. 307 (D.Kan.1969). Defendant Sexton, is alleged to have failed to file a timely answer on behalf of plaintiff in an Illinois suit. The alleged malpractice led to a default judgment being rendered against plaintiff by the Illinois court in the amount of $27,000.00. The judgment was later collected in proceedings initiated by the judgment creditor in this court, Winfield Associates, Inc. v. W. L. Stonecipher, Case No. KC–2600–A. At that time, defendant Sexton appeared as a witness for plaintiff in the latter's unsuccessful attempt to prevent collection of the judgment. Thereafter, plaintiff instituted this action against Sexton, as well as Meier, and the partnership.

The question now before the court is whether or not Meier and the partnership are amenable to jurisdiction under the Kansas long arm statute, K.S.A. 60–308(b), which provides in part:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state;

(2) The commission of a tortious act within this state; . . .

(5) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided in addition, that at the time of the injury either (i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use; . . ."

Meier contends that under none of the provisions of the statute would this court have jurisdiction over him individually, or the partnership, because the necessary contacts within the forum state are lacking.

In response, plaintiff asserts he needs more time for discovery in order that "proof of the numerous contacts of defendants within this district be disclosed as proof of the personal jurisdiction of this court." In this regard, the

court would call attention to the fact that defendant's motion has been on file since May of 1971. The court has before it plaintiff's affidavit filed in opposition to the motion to dismiss. Likewise, judicial notice is taken of the file and proceedings in Winfield Associates, Inc. v. W. L. Stonecipher, Case No. KC–2600–A, in which the Illinois judgment was collected and defendant Sexton appeared as a witness. The mere hope that further discovery might provide the nexus warranting *in personam* jurisdiction is no justification for postponing any longer a ruling upon defendant's motion. The case at hand can be distinguished from our recent decision in Milgo Electronic Corp. v. United Utilities, Inc., et al., Case No. KC–3380, cited by plaintiff in his brief, where the facts not only were extremely complicated, but were within the peculiar knowledge and control of the corporate defendants.

■ It is well settled that in a diversity case the federal court obtains personal jurisdiction over non-residents by compliance with the long arm statute of the state in which it sits. Rule 4(d) (7), (e), Fed.R.Civ.P., Wilshire Oil Company of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969). The Kansas law offers a trilogy of cases to consider in determining the "acts" or "minimum contacts" deemed sufficient to satisfy the statute.

Woodring v. Hall, 200 Kan. 597, 438 P.2d 135, involved a non-resident defendant who was sued in Kansas for nonpayment of a debt incurred while a resident of this state. Overruling a lower court decision for defendant, the state supreme court found that defendant had "transacted business" in Kansas and was subject to *in personam* jurisdiction under K.S.A. 60–308(b) (1). The court stressed that the series of loan transactions extended over a period of 10 years during which time the defendant was residing in Kansas and acquiring an education in a Kansas institution, and he had also used the Kansas courts to dissolve his marriage. In concluding its opinion, the court stated:

"Considering the quality and nature of the defendant's activities, it may be said he invoked the benefits and protection of the laws of this state as contemplated in Hanson v. Denckla, [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283] *supra,* and we have no hesitancy in concluding that the loaning of money as disclosed by the record with a corresponding promise to repay constituted the 'transaction of business' within the meaning of 60–308(b) (1)."

"Not only did the transaction upon which the action was based have substantial connection with Kansas, but the defendant's contacts in this state were more than minimal and were such that the maintenance of this action did not offend traditional notions of fair play and substantial justice."

The case of White v. Goldthwaite, 204 Kan. 83, 460 P.2d 578, also turned on K.S.A. 308(b) (1). There, an Oklahoma defendant was sued for monies allegedly due from two transactions that were related to a larger complex arrangement between the parties. The larger of the two transactions resulted from negotiations in Oklahoma and telephone negotiations between Kansas and Oklahoma by plaintiff (a Kansas resident) and defendant's representative in Oklahoma. Following these negotiations, and obviously as a result of them, plaintiff borrowed money from a Kansas bank, and in turn received collateral from defendant, which was subsequently pledged to the bank. The district court's judgment in favor of plaintiff was reversed by the Kansas Supreme Court on the basis that Kansas lacked personal jurisdiction over the defendant. Drawing from several federal cases, the court enumerated guidelines for determining whether or not personal jurisdiction was ac-

quired under the statute in the following language:

"From the foregoing cases it appears there are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of *transaction of business within the state*. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation (*see* Tyee Constr. Co. v. Dulien Steel, 62 Wash.2d 106, 381 P. 2d 245; also anno. 20 A.L.R.3d 1201)." [Emphasis added.]

In holding there was a lack of personal jurisdiction, the court emphasized that the entire transaction was essentially an Oklahoma enterprise, and plaintiff's claim arose out of defendant's activities in Oklahoma rather than Kansas. Furthermore, defendant's acts in Kansas, through her agent, were merely incidental and afforded her nothing in the way of enjoyment of any particular privilege or protection under Kansas law.

■ Completing the state trilogy of cases, we find Tilley v. Keller Truck & Implement Corp., 200 Kan. 641, 438 P.2d 128, which focused on K.S.A. 60–308(b) (5). The plaintiffs there sought to recover damages from the nonresident defendant for personal injuries received in a car-truck collision in Kansas. The supreme court rejected the contention that the business activities of defendant came within the purview of the statute and subjected the corporation to *in personam* jurisdiction in this state. Of im-

portance here was the court's observation that K.S.A. 60–308(b) (5) was designed to secure *in personam* jurisdiction over non-domiciliary defendants in "product hazard" cases. Consequently, that particular subsection of the statute can have no application to the case under consideration.

The federal court has also had several occasions to consider whether or not there were sufficient "minimum contacts" to constitute the "transaction of any business within this state" [K.S.A. 60–308(b) (1).] In National Bank of America at Salina v. Calhoun, 253 F. Supp. 346 (D.C.Kan.1966), Judge Templar, without the aid of any Kansas decisions construing the statute, found jurisdiction existed over a Nebraska resident in an action to recover on two checks, one of which was executed and delivered by defendant to plaintiff while defendant was physically present in Kansas. Although the defendant's checks were presented for payment at a Nebraska bank where they were dishonored, the court, gave a liberal interpretation to the term "cause of action," and held the statutory test was satisfied by a showing of other purposeful acts performed by defendant in Kansas in relation to the contract (checks) even though such acts were preliminary and subsequent to its execution. The reasoning of the court is illustrated by the following language:

"The activity in which defendant engaged in Kansas was in this case adequate to meet the liberal statutory criterion. Not only did the transactions upon which the suit is based have substantial connection with Kansas but the defendant's contacts in Kansas were such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

The opposite result was reached by Chief Judge Brown in Oswalt Industries, Inc. v. Gilmore, *supra*, shortly after *Woodring* and *Tilley* had been decided

by the state court. The plaintiff (seller), a Kansas corporation, had sued defendant (buyer), a resident of Georgia, for breach of a contract under which the latter agreed to purchase farm machinery from plaintiff. The contract was negotiated by telephone and by personal contact between defendant and plaintiff's salesmen in Georgia. Notwithstanding that defendant on one occasion came to Kansas at plaintiff's behest, to examine plaintiff's new manufacturing facilities, the court concluded that defendant had not had any "substantial connection" with Kansas, and there was no indication from the one visit that defendant sought to avail himself of the privilege of conducting activities within the state for the purpose of invoking the benefits and protections of the law of this state. The further observation was made that the telephone negotiations between the parties and the shipment by defendant of plaintiff's merchandise back to Kansas for the purpose of "credit and/or resale" were not of significant weight in determining whether defendant was transacting any business in this state.

Application of the Kansas statute was also before the Tenth Circuit Court of Appeals in Wilshire Oil Co. of Texas v. Riffe, *supra*, wherein the plaintiff corporation had brought an action in Kansas against three former employees for recovery of fines, penalties, and other expenditures incurred as a result of state and federal anti-trust violations. With respect to at least one of the nonresident defendants, jurisdiction was predicated for the most part on the fact he had attended a maintenance letting in 1962 in Kansas, representing his employer, and between the years of 1962 and 1967, he had submitted several bids to the state of Kansas in his capacity as a corporate officer. Neither "contact" was in connection with the matter relating to plaintiff's present claim against the employee. The court upheld Judge Stanley's conclusion that the employee in

performing these acts for his corporate principal, did not render himself *personally* amenable to service of process under the Kansas statute, that is, he was not *individually* transacting business in Kansas. Other alleged minimum contacts as set forth in the opinion were held not to have taken place within the forum, or if they did, they did not give rise to the cause of action asserted.

Although each case must be decided on the peculiar facts presented, the Kansas court has made it abundantly clear the long arm statute was intended to permit *in personam* jurisdiction only in those fact situations which fall within the confines of the substantive due process requirements. Essentially, the same factors which enter into a determination of whether the literal requirements of the long arm statute have been met, are involved in deciding whether the concepts of due process outlined in *Woodring, Tilley* and *White*, have been satisfied. With these principles as a guiding hand, this court can only conclude that the defendant Meier and the partnership of Sexton & Meier, have not had sufficient "minimum contacts" with Kansas to authorize the exercise of personal jurisdiction under any of the provisions of K.S.A. 60–308(b).

The only connection of Meier and the partnership with this state, came about through the acts and conduct of the defendant Sexton. Meier, personally, has had absolutely no contacts in a jurisdictional sense. Sexton was a licensed, practicing lawyer in the state of Arizona. At all times material to this case he was a partner in the firm of Sexton & Meier, a partnership engaged in the practice of law in Arizona. During the time Sexton was performing legal services for plaintiff in Arizona, plaintiff contacted Sexton by telephone and Sexton agreed to represent plaintiff in a law suit filed against him in Illinois. The transaction out of which the Illinois suit arose pertained to certain proposed financing of Arizona property owned by

plaintiff where Sexton had represented plaintiff in negotiations with the First National Bank of Arizona. The alleged malpractice giving rise to the present cause of action occurred in Illinois when Sexton failed to file a timely answer in that case, resulting in a default judgment being taken against plaintiff.

Other than the telephone conversation, Sexton's only contact with Kansas was when the judgment creditor sought to collect the default judgment rendered in Illinois and Sexton appeared in this court as a witness for plaintiff. There is no evidence that Sexton in any manner solicited plaintiff's business in Kansas, nor is there any indication he practiced law or performed any services for plaintiff in this state with respect to the pending Illinois action. Sexton's subsequent appearance in Kansas came long after the commission of the tortious act (in Illinois) upon which the present cause of action is based.

The court has carefully considered the evidence in light of the basic factors which must be present if jurisdiction is to be entertained over a non-resident on the basis of "transaction of business within the state." [K.S.A. 60–308(b) (1); *see* White v. Goldthwaite, *supra*]. At most, we have the telephone conversation initiated by plaintiff in Kansas with Sexton in Arizona, and Sexton's later appearance as a witness in this court. Neither can be said to have been acts whereby Sexton purposely availed himself of the privilege of conducting activities within Kansas so as to invoke the benefits and protections of its laws. They had no substantial connection with this state in the sense of transacting business here, nor did they give rise to the present cause of action for malpractice. Moreover, this court believes that assumption of jurisdiction under the circumstances would offend all traditional notions of fair play and substantial justice.

What has been said also disposes of the contention that jurisdiction was con-ferred under K.S.A. 60–308(b) (2). The alleged tortious act was committed by Sexton in Illinois, not in Kansas.

It is therefore by the Court ordered that the motion to quash service and to dismiss the complaint as to defendant Meier, and the partnership, be and the same is hereby sustained.