**CALDWELL–BAKER COMPANY,**
Plaintiff,

v.

**SOUTHERN ILLINOIS RAILCAR COMPANY, Defendant.**

No. CIV. A. 00–2380–CM.

United States District Court, D. Kansas.

Sept. 28, 2001.

Linus L. Baker, The Baker Group, L.L.C., Prairie Village, KS, for Plaintiff.

Philip R. Dupont, Rick E. Frawley, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Gregory J. Minana, Blackwell Sanders Peper Martin LLP, St. Louis, MO, Mark D. Hinderks, Stinson, Mag & Fizzell, P.C., Leawood, KS, Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This is a diversity action wherein plaintiff Caldwell–Baker Company seeks to recover lease payments allegedly owed to them by defendant Southern Illinois Railcar Company under a railcar lease agreement executed by the parties in 1997. Pending before the court is defendants' motion to dismiss for lack of personal jurisdiction (Doc. 7). Defendant seeks the court to dismiss the pending action, contending the court lacks personal jurisdiction over defendant. For the reasons set forth below, defendant's motion is denied.

● **Facts**[1]

This action arises out of a commercial railcar lease agreement executed by the parties in 1997. Plaintiff is a Delaware corporation with its principal place of business in Kansas. Defendant is an Illinois corporation, qualified to do business in Illinois with its principal place of business in Troy, Illinois. Defendant is not authorized to conduct business in Kansas and has no employees, facilities or bank accounts located in Kansas. Plaintiff is part owner of a fleet of grain transporting railcars. Defendant is a leasing company that leases

---

1. Pursuant to Fed.R.Civ.P. 12(b)(2), the allegations in plaintiff's complaint are taken as true to the extent they are uncontroverted by the defendant's affidavits. Where the parties have presented conflicting affidavits, all factual disputes have been resolved in the plaintiff's favor.

railcars from owners, then brokers these railcars to railroads and other industries throughout the country. Defendant generally seeks to sublease the leased railcars at a higher monthly income rate than paid to a railcar owner for use of the railcars.

### ● Terms of Lease Agreement

Under the terms of the parties' agreement, plaintiff agreed to lease up to four hundred twenty railcars to defendant in exchange for monthly rental payments of $400.00 per railcar. The agreement permitted defendant to sublease the railcars to railroads and other industries at a higher monthly rate than defendant paid to plaintiff under the agreement, on the condition precedent that defendant notify and provide the terms of the sublease to plaintiff before subleasing. The agreement required the railcars be used only for grain products, not chemical or fertilizer service which is corrosive.

### ● Formation of Lease Agreement

In August 1997, defendant telephoned plaintiff, located in Kansas, to inquire whether plaintiff would be interested in leasing out their railcars to defendant. In reply, Carle Baker, Jr., president of plaintiff's company requested that defendant provide information detailing the terms of the proposed lease agreement. Accordingly, an employee of defendant telephoned plaintiff's offices in Kansas and sent the proposed lease via facsimile to plaintiff's offices.

The agreement proposed by defendant provided that Illinois law would govern the agreement. However, per plaintiff's request, the final agreement provides "the terms of this Lease and all rights and obligations hereunder shall be governed by the laws of the State of Kansas without regard to Kansas' choice of law doctrine."

On August 29, 1997, defendant signed the lease agreement in Illinois and mailed the agreement to plaintiff's offices in Kansas. Upon receipt, plaintiff signed the agreement on September 2, 1997 and returned a duplicate to defendant's office in Illinois. Other than specified herein, defendant did not enter into Kansas to negotiate the agreement. Instead, the negotiations took place via telephone, letters, and faxes.

### ● Obligations Under the Agreement

Plaintiff's obligation under the agreement was to deliver the leased railcars at delivery points provided by defendant. The delivery points were not specified in the agreement. Instead, the agreement provided, "Delivery". Each Car shall be deemed delivered to [defendant] on the date (the "Delivery Date") it arrives at [defendant's] delivery point. Defendant specified the delivery points. Defendant asserts by verified affidavit that, in fact, it was defendant's sublessors who dictated the delivery points that defendant communicated to plaintiff. The agreement did not explicitly state that delivery points would include sites in the State of Kansas. However, during the course of the agreement defendant specified delivery of approximately 183 railcars to Kansas. Defendant, through its sublessors, accepted delivery of these cars in Kansas and began paying rent based on those Kansas delivery dates.[2] Plaintiff also delivered railcars to Idaho, Illinois, Indiana, Iowa, Missouri, Michigan, Nebraska, Ohio, Texas, Washington, Mexico and Canada, as specified by defendant.

Pursuant to the agreement, defendant made monthly rental payments to plaintiff by delivering the payments to plaintiff's offices in Kansas. The agreement provides "Lessee shall pay to Lessor as

---

**2.** The agreement provided "[R]ent shall become due for each Car upon the applicable Delivery Date unless such Car is reasonably rejected by Lessee ..."

monthly rent for each Car during the term, the sum of Four Hundred Dollars ($400.00)." The agreement did not specify that payments must be made in Kansas.

After the agreement was signed, on February 26, 1998 two of defendant's employees came to Kansas to introduce themselves to Mr. Baker, president of plaintiff's company. Mr. Baker did not know in advance that these two employees had planned to come to Kansas to introduce themselves to him. At the February 26 meeting, the parties discussed delivery of the rail cars and the meeting culminated in an amendment to the agreement.

During the course of the agreement, one of defendant's representatives contacted plaintiff's offices in Kansas requesting an additional 100 grain covered railcars to lease for a one year term. As a result, the agreement was again amended and 83 railcars were added to the railcar lease agreement. Subsequently, defendant's representative again contacted plaintiff's office requesting an additional 50 cars to lease for fertilizer services. No amendment was reached based upon this request.

Plaintiff has now filed this suit seeking payment of funds allegedly due and owing to it pursuant to the agreement. Defendant seeks the court to dismiss the action arguing the court lacks personal jurisdiction over defendant.

● **Personal Jurisdiction Standards**

■ A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. See *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). If the motion to dismiss is submitted prior to trial on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing to avoid dismissal for lack of personal jurisdiction. *Id.* Although the

plaintiff will be required to prove the factual basis for jurisdiction by a preponderance of the evidence at trial, on a pretrial motion to dismiss, all factual disputes are resolved in favor of the plaintiff. *Id.* If the plaintiff makes the required prima facie showing that personal jurisdiction exists,

> "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ In diversity actions such as the instant action, personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir.1994). To exercise personal jurisdiction over a non-resident defendant, the court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state" and that the due process requirements of the Constitution are satisfied. *Id.* at 1304–05. The Kansas long arm statute has been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process," such that these inquires are, for all practical purposes, duplicative. *Id.* at 1305.

■ A non-resident submits to the jurisdiction of the State of Kansas as to any cause of action arising from the performance of any of the acts enumerated in the Kansas long arm statute. Kan. Stat. Ann. § 60–308(b). And the Tenth Circuit has endorsed a three-part test to determine whether a nonresident defendant's contacts with the forum state are sufficient to meet due process standards. *Rambo v. American Southern Ins. Co.*, 839 F.2d

1415, 1419 n. 6 (10th Cir.1988); *Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F.Supp. 753, 757–58 (D.Kan. 1990). First, the defendant must have purposefully availed himself of the benefits of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* at 253, 78 S.Ct. 1228. Jurisdiction is proper when "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (emphasis in original).

Second, the claim must arise from the defendant's forum-related activities. There must be sufficient contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Finally, the quality and nature of the defendant's contacts must be such that it is reasonable to require him to appear in the forum state. *Id.* at 476, 105 S.Ct. 2174; International Shoe, 326 U.S. at 317, 66 S.Ct. 154. The court must consider the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

● **Discussion**

Plaintiff asserts that jurisdiction over defendant is proper pursuant to Kan. Stat. Ann. §§ 60–308(b)(1), (2), and (5), referred to as the "transaction of business," "commission of a tortious act" and the "express or implied contract" provisions of the Kan-

sas long-arm statute, respectively. Defendant disagrees, and argues that even if its contacts within the State of Kansas fall within the ambit of the Kansas long-arm statute, the exercise of personal jurisdiction over defendant in this case violates defendant's due process rights.

Neither party contends that the court may exercise general jurisdiction over defendant. Instead, the parties contest whether the court may exercise specific personal jurisdiction over defendant. Specific jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant only for purposes of claims arising out of that defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (noting court's exercise of personal jurisdiction over a party must comply with the requirements of the Due Process Clause of the Constitution, which contemplates two types of jurisdiction over the person and a party may be subject to either general or specific jurisdiction).

Defendant first argues that it did not transact business in the State of Kansas, and thus it is not subject to jurisdiction within the meaning of the Kansas long-arm statute's transacting business provision. Under § 60–308(b)(1), "[b]usiness is transacted within the state when an individual is within or enters this state in person or by an agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires." *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 778, 740 P.2d 1089, 1092 (1987). "The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state." *Anderson v. Heartland Oil & Gas, Inc.*, 249 Kan. 458,

467–68, 819 P.2d 1192, 1199 (1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 550 (1992).

Before jurisdiction may be entertained over a nonresident on the basis of transacting business within the state, three basic factors must be met: "(1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice." *White v. Goldthwaite*, 204 Kan. 83, 88, 460 P.2d 578, 582 (1969).

Determining whether the "transaction of business" took place within the meaning of the long arm statute requires an examination of all of the defendant's activities within Kansas related to the present cause of action. Defendant emphasizes that none of its agents entered into Kansas at any time in connection with the original negotiation and execution of the lease agreement. However, physical presence in the forum is only one factor for the court to consider. *Environmental Ventures, Inc. v. Alda Servs. Corp.*, 19 Kan.App.2d 292, 296, 868 P.2d 540, 544 (1994). As noted by the Kansas Court of Appeals, recent Kansas cases "suggest that a defendant need not physically enter the state to transact business within the meaning of the [Kansas long arm] statute." *Id.*

Defendant also asserts that as a "buyer" of the railcars at issue, it should not be subject to the plaintiff seller's forum. Defendant asserts that under the holdings in Green Country Crude, Inc. v. Avant Petroleum, Inc. and Oswalt Industries, Inc. v. Gilmore, a seller of merchandise generally is not successful in asserting jurisdiction in his forum state.

"[I]n suits against [a] vendor [on the basis of transacting business]the *seller* is not so successful in invoking his jurisdiction in suits against his customer. In each case in which the customer has been held to the jurisdiction of his vendor's forum, it appears that the buyer had some significant contact with the forum state through personal visits to inspect the merchandise, to take delivery, or by execution of the necessary documents *within the forum.* ... [M]ere contact by mail or phone is not sufficient contact with the forum...." *Oswalt*, 297 F.Supp. 307, 312–13 (D.Kan. 1969) (citations omitted; emphasis both added and in original), *Green*, 648 F.Supp. 1443 (D.Kan.1986).

Examining the papers in this case, the court has identified defendant's contacts with the State of Kansas as follows. First, defendant initiated a telephone call to plaintiff in Kansas to inquire about leasing defendant's railcars. Subsequently, negotiations regarding a lease agreement took place via telephone, facsimile and mail. Defendant did not physically enter into the State of Kansas when negotiating and executing the agreement. The agreement was signed by plaintiff in Kansas and by defendant in Illinois. However, during the course of the agreement an agent of defendant did physically enter into the State of Kansas, and upon meeting with plaintiff's agent the lease agreement at issue was amended. Subsequent telephone contacts initiated by defendant were placed to plaintiff's offices in Kansas regarding subsequent amendments to the agreement and performance of the contract.

In addition, the contract contemplated that defendant could specify any delivery point for the railcars to plaintiff. At least 183 railcars were delivered to sublessors of defendant in the State of Kansas. Although defendant may not have had a physical presence at these delivery points in Kansas, the railcars were delivered to

Kansas at the request of defendant. Moreover, the agreement contemplated that issues arising under the contract would be governed by Kansas law.

■ Given these contacts, the court finds defendant transacted business within the State of Kansas. Defendant had knowledge that plaintiff was a Kansas company when it initiated contact with plaintiff in Kansas with the intent to conduct business with plaintiff. Further, defendant stood to gain significant economic advantage by transacting with plaintiff to lease railcars that defendant could subsequently sublease at a profit. Through the course of the agreement, defendant subleased at least 183 railcars in the State of Kansas, thereby earning a profit in the state based upon the agreement at issue in this case. See *Volt Delta Resources, Inc.*, 241 Kan. at 778, 740 P.2d 1089 ("[b]usiness is transacted within the state when an individual is within or enters this state in person or by an agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires.").

Moreover, applying the White factors to determine whether the court can exercise personal jurisdiction over a nonresident on the basis of transacting business within the state, the court finds the exercise of personal jurisdiction here appropriate. First, as set forth above, the court finds defendant purposefully performed acts in the forum state in connection with the agreement at issue in this case. Second, the plaintiff's claims for relief arise from or are connected with the defendant's acts in the State of Kansas. Specifically, plaintiff seeks to recover under the terms of the agreement due to defendant's alleged breach of the agreement. Defendant's contacts in Kansas relate to the agreement. And third, the court finds the as-

sumption of jurisdiction by this court does "not offend traditional notions of fair play and substantial justice." *White*, 204 Kan. at 87, 460 P.2d at 582. The court finds it was "reasonably foreseeable" that the defendant could be required to defend an action regarding the agreement in Kansas. Given the Kansas choice of law provision in the agreement and defendant's contacts with Kansas, as outlined above, defendant could reasonably anticipate being haled into court in Kansas. See *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228. The Tenth Circuit recently stated that when "specific jurisdiction is based upon a contractual dispute, we must evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendants purposefully established minimum contacts with the forum." *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990) (quoting *Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. 2174).

Accordingly, considering Kansas's public policy of construing the long arm statute to the limits of due process, the court concludes that defendant's contacts in the State of Kansas satisfy the minimum contacts necessary to exercise personal jurisdiction over defendant.

Defendant next argues that it did not enter into an express or implied contract to be performed in whole or in party by either party in the State of Kansas, and thus it is not subject to jurisdiction within the meaning of the Kansas Long-arm statute's express or implied contract provision. Plaintiff argues that the "commission of a tortious act" provision of the Kansas long arm statute provides a separate basis for the exercise of personal jurisdiction over defendant. Given the court's analysis under the "transacting business" provision of the Kansas long arm statute, the court

finds it unnecessary to reach these arguments regarding the propriety of the court's exercise of specific personal jurisdiction over defendant. Plaintiff's claims, both those based in contract and in tort, arise out of defendant's alleged nonperformance of the railcar lease agreement. Through its analysis under the "transacting business" provision of the Kansas long arm statute, the court has found that defendant's contacts in Kansas relate to the formation and performance of the agreement and that such contacts are sufficient to allow the court to exercise personal jurisdiction over defendant. Therefore, because the plaintiff's claims relate to the agreement and defendant's contacts in the State of Kansas relate to the agreement, it is proper for the court to exercise specific jurisdiction over defendant in this case wherein plaintiff has alleged both contract and tort claims. See *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868 (noting court's exercise of personal jurisdiction over a party must comply with the requirements of the Due Process Clause of the Constitution, which contemplates two types of jurisdiction over the person and a party may be subject to either general or specific jurisdiction).

● Order

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of personal jurisdiction (Doc. 7) is denied. Defendant shall answer the pending complaint within 20 days following entry of this order.

IT IS SO ORDERED.